IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 08-cv-00406-LTB-KMT

WILLIAM R. PEARSON a/k/a BILLY RAY PEARSON,

    Plaintiff,

v.

NATIONAL RAILROAD PASSENGER CORPORATION (AMTRAK),

    Defendant.

_____

ORDER
_____

This matter is before me on a Motion for Summary Judgment [**Doc #41**] filed by Defendant, National Railroad Passenger Corporation (Amtrak), against Plaintiff, William R. Pearson a/k/a Billy Ray Pearson, seeking partial judgment in its favor on two of Plaintiff's claims. Oral arguments would not materially assist me in the determination of this motion. After consideration of the parties' briefs and arguments, I GRANT the motion for the following reasons.

**I. BACKGROUND**

Plaintiff is an African American male over the age of 40. He began working for Amtrak in March of 1974, until he was terminated in September 2006. At the time of his termination he was a conductor based in La Junta, Colorado.

Plaintiff filed this lawsuit seeking damages against Amtrak, his former employer, for: Race Discrimination in violation of 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"); Retaliation for his

race discrimination complaints in violation of Title VII; Age Discrimination in violation of 29 U.S.C. §§ 621, *et seq.* (the Age Discrimination in Employment Act or "ADEA"); and Race Discrimination in violation of 42 U.S.C. § 1981. Amtrak files this motion seeking summary judgment in its favor on Plaintiff's retaliation claim (Second Claim for Relief) and his age discrimination claim (Third Claim for Relief) only.

## II. EVIDENCE ON SUMMARY JUDGMENT

As an initial matter, I address Plaintiff's challenge to the affidavits and documentation filed by Amtrak in support of this motion. Plaintiff first asserts that three of the declarations provided as attachments to Amtrak's motion fail to comply with the requirements of 28 U.S.C. § 1746, which provides that when a matter can be supported by a sworn declaration, an unsworn statement may be substituted, "with like force and effect," when it is "in writing of such person which is subscribed by him, as true under penalty of perjury" and is verified as "true and correct." *Id.* Plaintiff maintains that the unsworn declarations of Conrad Lee, Richard Phelps and Michael Chandler – which were attached to Amtrak's motion – are insufficient under 28 U.S.C. § 1746 in that they do not aver that they are true and correct under penalty of perjury. *See e.g. Nissho-Iwai American Corp. v. Kline*, 845 F.2d 1300, 1306 (5th 1988).

The declarations at issue do provide, however, that they are made "[p]ursuant to 28 U.S.C. § 1746." As such, Amtrak argues that the declarations comply with the applicable legal requirements. Nonetheless, Amtrak resubmitted the identical declarations with the added averment that "I declare under penalty of perjury that the foregoing is true and correct." As such, the declarations now fulfill the requirements of 28 U.S.C. § 1746. I am not persuaded by Plaintiff's unsupported argument that Amtrak is barred from curing the alleged deficiency.

2

In addition, Plaintiff argues that the declaration made by Conrad Lee – an attorney representing Amtrak in this matter – does not properly authenticate the attached exhibits. In his declaration, Mr. Lee declares that the documents are "true and correct" copies of documents marked as deposition exhibits. Plaintiff maintains that these documents (Exhibits A-3, A-4, A-5, A-6, A-7, A-8, A-9 and A-10) are not authenticated as required by Fed. R. Civ. P. 56(e), and thus cannot be considered on summary judgment.

In response, Amtrak asserts that the documents at issue have all been produced in discovery and all were reviewed and authenticated by Plaintiff during his deposition. Moreover, Exhibit A-3 was specifically authenticated by Mr. Pearson's declaration, and Exhibits A-4 through A-10 were authenticated by Mr. Pearson during his deposition. Amtrak likewise argues that Exhibits A-4 through A-10 are "public government documents" that are self-authenticating under Fed. R. Evid. 902(a). Finally, Amtrak maintains, and I agree, that it is generally accepted that the use of an attorney declaration under these circumstances, is a proper means to bring before the court documents produced in discovery on summary judgement. *See generally Owens-Corning Fiberglass Corp. v. U.S. Air,* 853 F.Supp. 656, 663 (E.D.N.Y. 1994)(denying a motion to strike when the "the clear function of the [declaration] is to identify and introduce into evidence the exhibits annexed thereto" as "the purposes underlying Rule 56(e) – to safeguard and legitimate the evidence used to decide a motion for summary judgment – are not disserved by considering" the evidence). I note that Plaintiff does not dispute or challenge the legitimacy of the documents, nor does he assert that they are not true or correct copies. Under the circumstances here, I reject Plaintiff's challenge to the authenticity of the challenged exhibits.

## III. FACTS

Plaintiff was the senior conductor at Amtrak's La Junta station, and was responsible for providing directives to the other conductors. At some point during his employment Plaintiff asserts that he began to feel that his white co-workers were treating him less favorably based on his race, and he was continuously subjected to offensive racial jokes.

Plaintiff testified that he spoke with his supervisor, Tim Reidy, on "several" occasions in 2006 about his belief that his co-workers were harassing him and creating a hostile work environment. In his deposition, Mr. Reidy testified that Plaintiff complained that he was subject to race discrimination and it was Reidy's sense that Plaintiff's co-workers did not want to follow his directives because he was black. Mr. Reidy further testified that it was his belief that Plaintiff's issues with his co-workers were related to his race.

On August 24, 2006, an assistant conductor, Janis Mader, confronted Plaintiff and allegedly asked him to stop calling her "Jan-Ass," and telling people that she was his "train wife" and that she was having his baby. Sometime thereafter, Plaintiff called Mr. Reidy and reported his confrontation with Ms. Mader.

The following Monday, August 28, 2006, Plaintiff was delayed in coming into work by a traffic accident. Plaintiff was in contact with several crew members about the delay, but was ultimately able to make it to work in order for the train to leave on time. Plaintiff again called Mr. Reidy to report the incident. Plaintiff asserts that during this call he complained that a co-worker's threat to report him for being late – even though he was in contact with the crew about the situation – constituted race discrimination.

On Friday, September 1, 2006, Mr. Reidy held a meeting with Plaintiff and Ms. Mader to discuss their prior confrontation. At the meeting, which escalated into an argument, Ms. Mader made allegations against Plaintiff which Reidy believed amounted to accusations of sexual harassment. In her deposition testimony, Ms. Mader indicated that she did not believe that Plaintiff had sexually harassed her or that she had charged him with doing so. However, as a result of the incident, Mr. Reidy testified that he had no choice but to remove Plaintiff from service, effective immediately, based on Ms. Mader's accusations. A Notice of Formal Investigation was initiated, pursuant to Plaintiff's union contract, and a hearing was set for September 9, 2006. After the hearing, the hearing officer found Plaintiff guilty of the charges alleged, including Amtrak's anti-harassment policy. Plaintiff was then terminated.

## IV. RETALIATION CLAIM

Amtrak first seeks summary judgment in its favor on Plaintiff's retaliation claim. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). "When applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Serv's,* 165 F.3d 1321, 1326 (10th Cir. 1999).

If the movant carries its burden of showing the absence of a genuine issue of material fact, the non-movant must bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof. *Jencks v. Modern Woodmen of America,* 479 F.3d 1261, 1264 (10th Cir. 2007)(*citing Mares v. ConAgra Poultry Co.,* 971 F.2d

492, 494 (10th Cir. 1992)).  Where the nonmoving party bears the burden of proof at trial, that party must go beyond the pleadings and identify specific facts that demonstrate the existence of an issue to be tried by the jury.  *Id.*  An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant.  *Jenkins v. Wood*, 81 F.3d 988, 990 (10th Cir. 1996).

Under 42 U.S.C. § 2000e-3(a), it is unlawful "for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  When the plaintiff does not offer direct evidence of retaliation, a retaliation claim is analyzed under the burden-shifting framework delineated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  *See Fye v. Oklahoma Corp. Comm'n* 516 F.3d 1217, 1225 (10th Cir. 2008)(*citing Medlock v. Ortho Biotech, Inc.,* 164 F.3d 545, 550 (10th Cir. 1999)).  "To establish a *prima facie* case of retaliation, [an employee] must demonstrate (1) that he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Argo v. Blue Cross & Blue Shield of Kan., Inc.,* 452 F.3d 1193, 1202 (10th Cir. 2006)(*citing Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 66, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)); *see also Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1086 (10th Cir. 2007).  If the plaintiff makes the *prima facie* showing, the employer must proffer a legitimate, nondiscriminatory reason for the employment decision.  In response, the plaintiff then has the burden of demonstrating that the employer's asserted reasons are pretextual.  *Fye v. Oklahoma Corp., supra,* 516 F.3d at 1227 (*citing Meiners v. Univ. of Kan.,* 359 F.3d 1222, 1229 (10th Cir. 2004)).

In this case, Plaintiff's evidence that he engaged in protected opposition to discrimination – as the first step in a *prima facie* case – is his contention that he complained to Mr. Reidy several times in 2006 that his co-workers, who were all white, treated him less favorably and refused or resisted to follow his directives. Plaintiff avers that during these conversations he told Mr. Reidy that he was being harassed and discriminated against because he was black. Although Plaintiff cannot identify the dates of these conversations, he does recall the last time he complained to Mr. Reidy was on August 28, 2006, in connection with a co-worker's threat to report him for being late.

Amtrak asserts that there is no evidence that Plaintiff's complaints to Mr. Reidy – including his conversation on August 28 related to his tardiness – asserted mistreatment based on race or racial discrimination; rather Amtrak claims that the complaints consisted of "plain vanilla rude and unfair conduct" which is not protected opposition to discrimination. *See Petersen v. Utah Dept. of Corrections,* 301 F.3d 1182, 1188 (10th Cir. 2002). Amtrak also argues that Plaintiff's generalized complaints to Mr. Reidy do not rise to the level of a Title VII violation – in that they cannot be deemed as "extremely serious" under *Clark County School Dist. v. Breeden,* 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.E.2d 509 (2001), and because he cannot demonstrate that it was his reasonable belief that he engaged in protected activity because he did not address the complaints in his Equal Employment Opportunity Commission ("EEOC") filings or with the Dispute Resolution Office during the investigation that resulted in his termination. *See Crumpacker v. Kansas Dept. of Human Resources,* 338 F.3d 1163, 1171 (10th Cir. 2003).

However, Plaintiff asserts that his complaints to Mr. Reidy over the course of 2006 did, in fact, allege that the mistreatment by his co-workers because he was black and, in his deposition, Mr. Reidy confirmed that Plaintiff had complained to him about being subject to racial discrimination.  Because "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors," *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004), Plaintiff asserts a material fact question exists as to whether his complaints to Mr. Reidy in 2006 constituted protected activity.  I agree and conclude that Plaintiff has met his burden to present evidence that he engaged in protected opposition to discrimination as required by the first prong of a *prima facie* case of retaliation.

To meet the second prong of his *prima facie* case, Plaintiff must establish that a reasonable employee would have found the challenged action materially adverse.  Plaintiff alleges two adverse employment actions in his retaliation claim – Mr. Reidy's decision to hold him out of service, without pay, on September 1, 2006, and Mr. Reidy's "participation in the plan to terminate [him] prior to the [disciplinary] hearing and his failure to prevent the unfair and biased hearing" – in essence, his termination via an unfair hearing process.  Both actions are clearly employment actions that a reasonable employee would find to be materially adverse.  The fact that Plaintiff was taken out of service is not disputed and, while it is hotly contested, Plaintiff has presented sufficient evidence – in the form Mr. Reidy's deposition testimony that the decision makers indicated that they had made a decision to terminated him prior to his hearing – that his termination was not done in a fair manner.

Thus, at issue is whether Plaintiff has met his burden – pursuant to the third prong of his *prima facie* case – to establish that a causal connection existed between his protected activity and

the adverse employment actions.  Amtrak argues that there is no evidence that the employment decisions were in any way connected to Plaintiff's complaints of racial discrimination. Specifically, as to both the decision to take him out of service and to terminate him, Amtrak asserts there is no evidence that they were done in retaliation for Plaintiff's complaints, but were instead done in response to the charge and finding that Plaintiff violated Amtrak's anti-harassment policies.  Amtrak argues that it is undisputed that the decision makers were unaware that Plaintiff had complained of race discrimination to Mr. Reidy.  Finally, Amtrak conceeds that while there may be sufficient evidence that the adverse employment decisions were improper, because they were based at least in part on race discrimination, it argues there is no evidence that they were improperly done for *retaliatory* reasons.

I agree that Plaintiff is unable to met his burden of proving a causal connection between his complaints to Mr. Reidy and the employment actions at issue here.  Plaintiff maintains that in early September of 2006, he was taken out of service and was subject to an unjust hearing process.  This treatment followed his complaints to Reidy, his supervisor, that he was treated unfairly by his co-workers, because he was black, during the summer of 2006.   For purposes of establishing his *prima facie case*, a plaintiff may establish a causal connection by temporal proximity between the protected activity and adverse action.  *See Fye v. Oklahoma Corp., supra,* 516 F.3d at 1228 (*citing Haynes v. Level 3 Comm'ns, LLC,* 456 F.3d 1215, 1228 (10th Cir. 2006)(stating that a plaintiff can establish a causal connection by presenting evidence that "protected conduct [was] closely followed by adverse action").

However, while temporal proximity *may* constitute circumstances that justify an inference of retaliatory motive, such is not always the case.  *See e.g. Kelley v. Goodyear Tire and*

*Rubber Co.,* 220 F.3d 1174, 1179 (10th Cir. 2000).  Here, Plaintiff does not challenge the undisputed evidence that the decision makers relating to his hearing and subsequent termination were unaware that he had complained to Reidy about his co-workers' alleged racial harassment. In addition, Plaintiff does not challenge the uncontested evidence that the decision to take him out of service by Mr. Reidy on September 1, 2006, was unrelated to his complaints of racial discrimination; rather, the sole evidence is that he was taken out of service by Mr. Reidy due to the allegations made by Ms. Mader.  As a result, I conclude that Plaintiff has not come forward with sufficient evidence to establish a causal connection between the complained-of employment actions and Plaintiff's complaints of racial discrimination by his co-workers to his supervisor, and thus he has failed to make his *prima facie* showing for his retaliation claim.  Accordingly, summary judgment should enter in favor of Amtrak on Plaintiff's retaliation claim.

## V.  AGE DISCRIMINATION CLAIM

In addition, summary judgment should enter in Amtrak's favor on Plaintiff's age discrimination claim.  First, I conclude that Plaintiff did not file a charge of age discrimination with the EEOC and thus his claim must be dismissed for failure to exhaust his administrative remedies.  *See Saimiri v. Shaver & Sons, Inc.,* 111 F.3d 794, 799 (10th Cir. 1997).  Plaintiff's assertion that he checked the age discrimination box on the EEOC Intake Questionnaire –  and, as such, he has exhausted his administrative remedies –  appears to be without evidentiary or legal support.

More importantly, Plaintiff's claim is not cognizable because his claim here is that his co-workers – who were all older than him – discriminated against him because they did not like that he was younger than them but in a senior position.  As a result, his claim amounts to *reverse*

age discrimination and, as such, does not state a claim under the ADEA. *See General Dynamics Land Systems, Inc. v. Cline*, 540 U.S. 581, 124 S.C. 1236, 157 L Ed.2d 1094 (2004).

ACCORDINGLY, for the reasons stated above, the Motion for Summary Judgment [**Doc #41**] filed by Defendant, National Railroad Passenger Corporation (Amtrak), against Plaintiff, William R. Pearson a/k/a Billy Ray Pearson, is GRANTED. As a result, Plaintiff's Second Claim for Relief for Retaliation and his Third Claim for Relief for Age Discrimination are DISMISSED WITH PREJUDICE.

Dated: June   30  , 2009, in Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE